UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Adriana M.Y.M., | Civ. No. 26-213 (JWB/JFD) |
| Petitioner, | |
| v. | |
| David Easterwood, *in his official capacity as Field Office Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*; Todd M. Lyons, *in his official capacity as Director of Immigration and Customs Enforcement*; Kristi Noem, *in her official capacity as Secretary of Homeland Security*; U.S. Department of Homeland Security; and U.S. Immigration and Customs Enforcement, | **ORDER ON MOTION TO DISMISS AND PETITION FOR WRIT OF HABEAS CORPUS** |
| Respondents. | |

---

Shortly before the deadline to answer Petitioner Adriana M.Y.M.'s Petition for a Writ of Habeas Corpus in this matter (*see* Doc. No. 3), Respondents filed a motion to dismiss the Petition or transfer it to the Western District of Texas based on Petitioner's transfer to Texas before the Petition was filed. (Doc. No. 4.) Respondents did not otherwise answer the Petition on the merits. This Court ordered additional briefing on the motion, and both sides submitted additional materials. (*See* Doc. Nos. 6, 8–11.)

Because Petitioner's immediate custodian was not known, disclosed to counsel, or reasonably ascertainable at the time of filing, her Petition was properly filed in this District. Jurisdiction attached at the moment of filing, and Petitioner's later-revealed

transfer to Texas does not divest this Court of jurisdiction.

On the merits, this case asks whether Respondents may detain a noncitizen under 8 U.S.C. § 1225(b)(2) if the noncitizen entered the United States and was arrested years later within the country's borders. The answer is no. Because Petitioner is already in the country—not seeking admission at the Nation's borders or ports of entry—Respondents cannot subject her to mandatory detention under § 1225.

Such a broad reading of § 1225(b)(2) has been often rejected in this District, regardless of whether the petitioner entered without inspection or was initially detained at the border and released. *See, e.g.*, *Avila v. Bondi*, Civ. No. 25-3741 (JRT/SGE), 2025 WL 2976539, at *5–7 (D. Minn. Oct. 21, 2025), *appeal docketed*, No. 25-3248 (Nov. 10, 2025); *see also Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1142–48, 1150–52 (D. Minn. 2025); *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 968–970 (D. Minn. 2025); *Mayamu K. v. Bondi*, Civ. No. 25-3035 (JWB/LIB), 2025 WL 3641819, at *7–8 (D. Minn. Oct. 20, 2025).

Petitioner was already in the country when she was detained by Immigration and Customs Enforcement ("ICE"). Thus, § 1226(a), not § 1225(b), establishes the authority for her detention. But, because Respondents have not produced a warrant or any other exhibit that sets forth the proper basis for Petitioner's detention, the statutory requirements authorizing detention are not satisfied, and the Petition is granted to the extent it seeks release.

## BACKGROUND

Petitioner is a citizen of Ecuador. (*See* Doc. No. 1, Petition ¶ 8.) She entered the

United States approximately two and a half years ago. (*Id.* ¶ 39.) Petitioner alleges that she has a valid work permit, a pending asylum claim for which she has attended all required appearances, and no criminal history. (*Id.* ¶¶ 45–48.)

On January 12, 2026, ICE agents arrested Petitioner outside the Target store where she works. (*Id.* ¶ 40.) She was detained alongside her husband. (*Id.* ¶ 44.) Petitioner has since remained in immigration custody, and her last known location before filing her Petition was in St. Paul, Minnesota. (*Id.* ¶¶ 8, 17, 42.) She alleges that her attorney was not able to speak with her between her arrest and the time of filing. (*Id.* ¶ 43.)

After her arrest, Petitioner was booked into ICE's St. Paul Field Office at 7:30 a.m. (Doc. No. 9, Rich. Decl. ¶ 5.) Citing lack of bed space, Respondents sent Petitioner to El Paso, Texas, on a flight that departed at 10:49 a.m. (*Id.* ¶¶ 6, 8.) She arrived in El Paso at approximately 1:09 p.m. (*Id.*)

Meanwhile, Petitioner's sister contacted counsel around 12:00 p.m. (Doc. No. 11, Slowing-Romero Decl. ¶ 5.) Counsel then attempted to locate Petitioner using the USCIS Online Detainee Locator, but Petitioner did not appear in the system. (*Id.* ¶¶ 5–7.) Counsel knew that ICE typically processed detainees at Fort Snelling, but she had been previously told by authorities there that legal visits were no longer allowed. (*Id.* ¶ 8.)

By the time counsel filed the Petition at 9:55 p.m., she believed Petitioner was detained at the St. Paul Field Office. (*Id.* ¶¶ 9–10, 12.) She had no way to directly contact or otherwise locate Petitioner, and Respondents had not advised anyone about a transfer to Texas. (*Id.* ¶¶ 9, 11.) Counsel learned Petitioner was in Texas at approximately 11:30 p.m., based on the Online Detainee Locator. (*Id.* ¶ 12.)

3

## DISCUSSION

I.     **Motion to Dismiss or Transfer**

Respondents seek to dismiss the Petition or transfer it, arguing this Court lacks jurisdiction because Petitioner was not detained in this District at the time of filing. (*See* Doc. No. 4.) Respondents' argument focuses on the "district of confinement" and "immediate custodian" rules, as well as the limited exception presented in *Ex parte Endo*, 323 U.S. 283 (1944) (*See* Doc. No. 8 at 1–5.) Petitioner contends that the "unknown custodian exception" applies here and that jurisdiction remains proper in this District despite Petitioner's transfer. (*See* Doc. No. 10 at 6–14.)

Ordinarily, a habeas petition must be filed in the district of confinement and name the petitioner's immediate custodian. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004). An exception is recognized, however, where the petitioner's location is unknown at the time of filing—such as when the petitioner is in transit—or where immigration authorities have not disclosed where the petitioner is being detained or by whom, and circumstances have prevented or precluded contact with counsel. *See Ozturk v. Hyde*, 136 F.4th 382, 392 (2d Cir. 2025); *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 393 (D.N.J. 2025). Where a proper respondent is named at the time of filing and is within the court's territorial jurisdiction, habeas jurisdiction attaches at that moment. *See Van Tran v. Hyde*, No. 25-cv-12546-ADB, 2025 WL 3171210, at *4 (D. Mass. Nov. 13, 2025). Under this exception, a later-revealed transfer outside the district does not divest the court of jurisdiction. *See id.* at *3–4; *see also Padilla*, 542 U.S. at 441 (recognizing that a district court can retain jurisdiction despite petitioner being transferred after filing).

The exception ensures that the Government's actions do not deprive individuals of their right to challenge the legality of their confinement and prevents "the Kafkaesque specter of supplicants wandering endlessly from one jurisdiction to another in search of a proper forum." *Eisel v. Sec. of the Army*, 477 F.2d 1251, 1258 (D.C. Cir. 1973). As other courts have explained, the exception reflects the longstanding principle that "there is no gap in the fabric of habeas—no place, no moment, where a person held in custody in the United States cannot call on a court to hear the case and decide it." *Khalil v. Joyce*, 777 F. Supp. 3d 369, 410 (D.N.J. 2025).

Petitioner was detained by ICE in Minnesota on the morning of January 12, 2026, and flown to Texas hours later. (Lee Decl. ¶¶ 5–6.) Petitioner's counsel filed the Petition shortly before 10:00 p.m. that evening, reasonably believing that Petitioner remained detained in Minnesota. (Petition ¶¶ 8, 17, 42; Slowing-Romero Decl. ¶¶ 9–12.) Nothing in the record reflects that Respondents disclosed Petitioner's transfer in advance, allowed for communication with counsel, or otherwise conveyed Petitioner's whereabouts at the time of filing.

Under these circumstances, habeas jurisdiction does not turn on Petitioner's actual location at the moment of filing, particularly because Respondents controlled her movements and communication with counsel was limited. *See Munoz-Saucedo*, 789 F. Supp. 3d at 394; *see also Ozturk*, 136 F.4th at 392–93. Because Petitioner properly named Respondents within this Court's territorial jurisdiction based on her last known location at the time of filing, jurisdiction attached at that moment and is not defeated by her transfer. *See Van Tran*, 2025 WL 3171210, at *4.

Recent habeas decisions confirm that the unknown custodian exception remains necessary where Government-controlled transfers—often executed within hours of detention and before communication with counsel is possible—risk defeating timely judicial review. *See Munoz-Saucedo*, 789 F. Supp. 3d at 394. Given the circumstances of Petitioner's detention and transfer, the exception applies here. The Petition was properly filed in the District of Minnesota, and the motion to dismiss the Petition or transfer venue is denied.

## II.   Habeas Petition

### A.   Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful statutory basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Immigration detention, like all civil detention, must rest on an express congressional grant of authority and must bear a reasonable relation to its statutory purpose. *Zadvydas v. Davis*, 533 U.S. 678, 687, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). Section 2241 confers jurisdiction to determine whether the Executive Branch has statutory authority to detain an individual, including in the immigration context. *See id.* at 687–88.

### B.   Analysis

Petitioner challenges only the lawfulness of her detention under federal law. She

does not contest any removal order, the conduct of removal proceedings, or the execution of removal. Therefore, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition is not directed at removal, statutory channeling provisions do not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

The Immigration and Nationality Act ("INA") distinguishes between inspection, removal proceedings, and detention authority. "Inspection" is the process by which immigration officers determine whether a noncitizen seeking entry at the border or a port of entry may be admitted to the United States. *See* 8 U.S.C. § 1225(a). Section 1225 governs that process and generally requires detention in the case of a noncitizen "seeking admission." *Id.*; *see also Maldonado*, 795 F. Supp. 3d at 1149, 1152.

Section 1226, by contrast, governs detention of noncitizens already present in the United States. *Jennings*, 138 S. Ct. at 846. Detention under § 1226(a) is not mandatory and permits release on bond or recognizance. *Maldonado*, 795 F. Supp. 3d at 1149–50.

The vast majority of district courts considering the issue have determined that the text, structure, and function of the INA's detention provisions all indicate that § 1225 does not apply to noncitizens present in the interior of the country like Petitioner. *See, e.g.*, *id.*, at *5–7; *Santuario v. Bondi*, Civ. No. 25-4296 (JRT/JFD), 2025 WL 3469577, at *2 (D. Minn. Dec. 2, 2025); *N.A.M. v. Noem*, Civ. No. 25-4737 (JRT/EMB), 2025 WL 3754145, at *1 (D. Minn. Dec. 29, 2025).

*Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), does not alter the result either. Respondents have previously cited to it as if it reflects an independent

7

adjudicatory resolution of statutory ambiguity. It does not. The Board of Immigration Appeals ("BIA") is a component of the Department of Justice ("DOJ") and operates under the Attorney General's supervisory authority. Its precedents are subject to review, revision, and overruling by the Attorney General, who sets binding interpretations of the INA for the Executive Branch. *Yajure Hurtado* thus reflects the DOJ's adopted litigation position concerning the scope of § 1225(b)(2), not an interpretation generated independently of that position. *See* Memorandum from Rodney S. Scott, U.S. Customs & Border Protection, Detention of Applicants for Admission (July 10, 2025) (memo from DHS requiring that all "applicants for admission" be detained under § 1225(b)(2) during removal proceedings).

And even if *Yajure Hurtado* were such an independent interpretation, it would run headlong into the statute's text and structure for the reasons already explained. Where an agency's reading conflicts with the statute Congress enacted, it does not control. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) (explaining that only long-standing and consistent agency interpretations merit weight); *see also Belsai D.S. v. Bondi*, Civ. No. 25-3682 (KMM/EMB), 2025 WL 2802947, at *7 n.5 (D. Minn. Oct. 1, 2025).

In habeas review, the question is not whether the Executive Branch has spoken with one voice—whether through the DOJ or BIA—but whether the detention authority it asserts is grounded in statute. That determination remains for the Article III courts. *See Zadvydas*, 533 U.S. at 688 ("[T]he habeas statute … does not require courts to defer to the Attorney General's interpretation of the statute. Rather, it requires the courts to

determine whether the detention is lawful.").

The analysis here is straightforward. Petitioner has resided in the United States for approximately two and a half years. When ICE detained Petitioner in Minnesota, she was in the interior of the country, not at a port of entry. Being arrested by ICE on January 12, 2026 did not transform Petitioner, who has lived in the community for more than two years, into a noncitizen "seeking admission." Petitioner was arrested while within the country and, thus, to the extent that Petitioner is subject to detention, that detention would be pursuant to § 1226. Even so, there is no evidence in the record that Respondents properly invoked that authority to detain Petitioner here.

The Supreme Court has consistently treated §§ 1225 and 1226 as addressing different populations at different procedural moments, not as interchangeable sources of detention authority. *Jennings*, 138 S. Ct. at 836–38. Allowing Respondents to toggle between detention regimes in this way would collapse the statutory structure Congress enacted and render § 1226 largely superfluous. While Congress may extend detention authority by statute, the courts and the Executive Branch cannot.

On this record, Petitioner's continued detention rests on a statute and an interpretation that do not apply and is unlawful. *Khalid B.Q. v. Bondi*, Civ. No. 25-4584 (JWB/DJF), Doc. No. 10 at 6 (D. Minn. Dec. 18, 2025); *Xuseen A. v. Bondi*, Civ. No. 25-4514 (JWB/DJF), Doc. No. 16 at 7 (D. Minn. Dec. 19, 2025). Further, even if Respondents had sought to detain Petitioner under § 1226, the record contains no evidence that there is a valid basis for detention at all.

Thus, Petitioner is entitled to a writ of habeas corpus that grants her immediate

release. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for "unlawful executive detention"). When the Executive Branch detains without statutory authorization, habeas relief is not limited to ordering additional process. The function of habeas corpus is to obtain release from unlawful custody. *Wajda v. United States*, 64 F.3d 385, 389 (8th Cir. 1995). Where detention lacks a lawful predicate, release is an available and appropriate remedy. *Munaf*, 553 U.S. at 693.

Where the record shows no valid statutory basis for detention in the first place, the remedy is not to supply one through further proceedings. Because Petitioner has shown Respondents have not invoked a provision of the INA that authorizes her continued detention, the petition for a writ of habeas corpus is granted, and Petitioner's other habeas claims are not reached.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1. Respondents' Motion to Dismiss or Transfer (Doc. No. 4) is **DENIED**.

2. Petitioner Adriana M.Y.M.'s Petition for a Writ of Habeas Corpus (Doc. No. 1) is **GRANTED**.

3. **Release.** Respondents shall immediately release Petitioner from custody. She must be released in Minnesota.

If Petitioner is currently held outside Minnesota, Respondents shall immediately initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiating Petitioner's return based on administrative

convenience, transportation availability, or detention-capacity considerations.

Upon Petitioner's arrival in Minnesota, Respondents shall effectuate release forthwith. If, at the time release would otherwise occur, weather conditions would expose Petitioner to extreme cold or other reasonably dangerous conditions, Respondents may delay physical release only for the brief period necessary to effectuate release in a safe manner. Respondents shall employ the earliest reasonably available safe means of release and may not delay release where a safe option is available. Any such delay must be strictly limited and must not be used to justify continued custody, supervision, or discretionary release authority.

4. **Notice.** Within 48 hours of this Order, Respondents shall file an update on the status of Petitioner's release. In the update, Respondents must confirm the time, date, and location of the release or anticipated return and release. If Petitioner has been removed from Minnesota, Respondents must file a confirmation of the time, date, and location of release promptly upon Petitioner's arrival in Minnesota.

5. Respondents may not administratively recharacterize this release as discretionary release under 8 U.S.C. § 1226 or any regulation, nor may they continue or impose conditions of supervision in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court, or absent a new and independently lawful custody decision properly executed under the law. For the avoidance of doubt, Respondents' compliance with this Order requires Petitioner's immediate release in Minnesota without any conditions of supervision or restraint.

6. Respondents may not re-detain Petitioner under a statutory theory this Court has rejected in this proceeding absent materially changed circumstances.

7. Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: January 24, 2026              *s/ Jerry W. Blackwell*
                                    JERRY W. BLACKWELL
                                    United States District Judge